ALLEN COUNTY BAR ASSOCIATION *v.* BROWN.

[Cite as *Allen Cty. Bar Assn. v. Brown*,

124 Ohio St.3d 530, 2010-Ohio-580.]

*Attorneys at law — Misconduct — Failure to act with reasonable diligence —*
*Failure to notify client of receipt of funds — One-year suspension, stayed*
*on conditions.*

(No. 2009-1230 — Submitted September 29, 2009 — Decided

February 24, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-002.

_____

**Per Curiam**.

{¶ 1} Respondent, Christi Lee Brown of Lima, Ohio, Attorney
Registration No. 0062696, was admitted to the practice of law in Ohio in 1994.
The Board of Commissioners on Grievances and Discipline has recommended
that we suspend her license to practice law for one year, all stayed on conditions,
based on findings that she neglected legal matters, did not act with reasonable
diligence and promptness, and failed to promptly notify a client of her receipt of
funds to which the client was entitled. We agree that respondent committed the
professional misconduct and that the board's recommended sanction is
appropriate.

{¶ 2} Relator, Allen County Bar Association, charged respondent with
violations of the former Code of Professional Responsibility for acts committed
before February 1, 2007, and of the Ohio Rules of Professional Conduct for acts
committed after that date. A panel of the board heard the case and dismissed
some of the charges alleged in the complaint. It found that respondent had
committed professional misconduct and recommended that respondent be

suspended from the practice of law for one year, all stayed upon conditions. The board adopted the panel's findings and recommendation.

{¶ 3} The violations alleged arose from respondent's representation of two clients in separate collection matters. In each case, respondent was seeking to collect on a money judgment. In one instance, respondent accepted a retainer but took no steps to collect on the judgment. In the other, respondent ceased all activity in the case after collecting only a portion of the judgment and retained those funds until threatened with disciplinary action.

{¶ 4} In both cases, respondent repeatedly ignored written and verbal requests from her clients for information on the status of their cases. At the hearing, respondent gave two reasons for this. First, as a solo practitioner, respondent followed office-management procedures that were, at best, disorganized. Second, respondent admitted to an avoidance response, in which despite her knowledge that she "was doing wrong * * * it was easier to do something else than it was to address these situations."

{¶ 5} Compounding the panel's concerns over these admissions was evidence that respondent had rejected assistance from her local bar association in 2004 and 2008: "By her own admission, respondent began having difficulties in her practice as early as 2004, yet when the Bar Association also brought this to her attention at that time, she apparently did nothing to get matters in hand. She did not search out appropriate CLE courses, nor turn to others for assistance. Granted, she had a busy practice and a household to manage, including for a period of time, a son with medical problems * * *. Instead, for whatever reasons, she let matters slide. Thus her professional difficulties compounded and the various grievances were filed. * * * Of further concern is the fact that when offered an experienced mentor in 2008 she failed to respond positively. To say, as does Respondent, that when confronted with an acknowledged error, she copes by moving on to do something else signifies a deeper problem."

{¶ 6} The panel found violations of Prof.Cond.R. 1.1 (a lawyer shall provide competent representation to a client), 1.3 (a lawyer shall act with reasonable diligence and promptness), and 1.15 (a lawyer shall promptly notify a client when funds are received). In considering the sanction to be imposed, the panel found both mitigating and aggravating factors. In mitigation, the panel cited respondent's (1) cooperation in the proceedings and sincere remorse, (2) lack of a prior disciplinary record, and (3) lack of selfish or dishonest motive. BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). Two aggravating factors were also found: multiple offenses and what the panel termed a "disturbing pattern" of misconduct. BCGD Proc.Reg. 10(B)(1)(c) and (d).

{¶ 7} The panel discussed two additional factors in greater detail. BCGD Proc.Reg. 10(B)(2)(c) lists in mitigation a respondent's "timely good faith effort to make restitution." The panel acknowledged that respondent had made restitution to both clients but was reluctant to consider that a mitigating factor because respondent did not make restitution until disciplinary action had either been threatened or initiated. The panel did note, however, that both uncollected judgments remained enforceable.

{¶ 8} The panel also cited BCGD Proc.Reg. 10(B)(2)(h) in noting that respondent had implemented changes to her practice to facilitate better case management. The panel, however, was concerned about the long-term effectiveness of these measures. Respondent, by her own admission, had been overwhelmed at times as a solo practitioner but nevertheless desired to return to solo practice in the future. She had also refused help in the past, including offers of assistance from the bar association. The panel questioned "what long term network Respondent has in place should she undoubtedly face similar stresses of practice in the future."

{¶ 9} The panel recommended a one-year suspension, all stayed upon the following conditions: (1) that respondent complete 12 hours of CLE in law-office

management, with instruction to cover office organization, time and task management, and basic software aids for case management, (2) that respondent submit to a stress-management assessment by the Ohio Lawyers Assistance Program ("OLAP") and enter into any follow-up contract deemed necessary by OLAP, (3) that respondent participate in a two-year mentoring program similar to the one previously offered by the Allen County Bar Association, and (4) that respondent commit no further misconduct.

{¶ 10} The board adopted the panel's findings of fact. It adopted its conclusions of law in part, concurring in the panel's finding that respondent had violated Prof.Cond.R. 1.3 and 1.15(d). The board also recognized that certain acts occurred before February 1, 2007,[1] and therefore found violations of DR 6-101(A)(3) (prohibiting neglect of an entrusted legal matter) and 9-102(B)(1) (requiring prompt notice to clients of receipt of funds). The board adopted the panel's recommended sanction.

{¶ 11} We, in turn, adopt the board's findings of fact, conclusions of law, and recommended sanction.

{¶ 12} The board found *Dayton Bar Assn. v. Sebree*, 96 Ohio St.3d 50, 2002-Ohio-2987, 770 N.E.2d 1009, to be "representative of the problems afflicting Respondent in this case. Like Sebree, Respondent is facing multiple grievances which stemmed from a pattern of neglect, rather than an isolated incident." We agree that the holding of *Sebree* should be applied in this case.

{¶ 13} In *Sebree*, the respondent mismanaged the cases of two clients. Id. at ¶ 1-5. His poor office procedures and busy practice manifested themselves in his failure to properly respond to client communications and the neglect of the

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. When both the former and current rules are cited for the same act, the allegation constitutes a single ethical violation. *Disciplinary Counsel v. Freeman,* 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31.

matters that the two clients had entrusted to him. In *Sebree* and in this case, the misconduct was attributable, at least in part, to busy practices, poor office management, and the lack of guidance. Id. at ¶ 6.

{¶ 14} In *Sebree*, we agreed with the stipulation of the parties that the "complaints looked at individually are not heinous and do not represent intentional wrongdoing on the Respondent's part, but are indicative of an overall pattern that suggests the Respondent needs assistance, guidance and counseling in regard to his time and practice management skills." 96 Ohio St.3d 50, 2002-Ohio-2987, 770 N.E.2d 1009, at ¶ 6.

{¶ 15} We ordered a six-month suspension for Sebree, which was stayed on the condition "that respondent permit his office practices and management skills to be monitored and reviewed * * * for at least one year, that respondent attend a seminar on office-management skills, * * * and that respondent receive any further education or advice or perform any other acts that [his] monitor recommends during the monitoring period." Id. at ¶ 9.

{¶ 16} We have applied *Sebree* in cases with analogous patterns of misconduct, tailoring the conditions of stayed suspensions to address the causes of the misconduct.

{¶ 17} In *Cuyahoga Cty. Bar Assn. v. Poole*, the respondent was charged with three counts. 120 Ohio St.3d 361, 2008-Ohio-6203, 899 N.E.2d 950, ¶ 4-8. Two counts related to Poole's taking fees from clients yet failing to perform work or return client communications. The third count addressed Poole's failure to cooperate with the disciplinary process. Like the respondent in this case, Poole did not communicate with clients, neglected entrusted legal matters, and failed to return either client's money until grievances were filed. Id. at ¶ 4, 6. Citing *Sebree*, we noted that Poole might benefit from counseling or therapy, and we stayed his one-year suspension on the conditions that he "(1) consult the Ohio Lawyers Assistance Program and comply with any recommendations for

treatment, (2) complete a one-year monitored probation, * * * (3) comply with all of the other requirements of Gov.Bar R. V(9), and (4) commit no further misconduct." Id. at ¶ 21.

{¶ 18} In *Cuyahoga Cty. Bar Assn. v. Sherman*, the respondent neglected a legal matter, failed to respond to client communications, and failed to maintain client funds in a separate, identifiable bank account. 101 Ohio St.3d 158, 2004-Ohio-340, 803 N.E.2d 398. Citing *Sebree*, we suspended Sherman for six months, stayed on the condition that he commit no further misconduct. Id. at ¶ 7.

{¶ 19} In *Cleveland Bar Assn. v. Norton*, the respondent neglected two clients' cases, failed to appropriately communicate with his clients, and was uncooperative during the disciplinary proceeding. 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964, at ¶ 2, 6-11, 13-15. Norton expressed remorse, had no prior disciplinary record, and established his otherwise good character and reputation. Id. at ¶ 22. He explained that "he did not deliberately ignore his clients. * * * [H]e had simply 'bitten off more than he could chew' while trying to practice on his own for the first time. [Norton] described his misconduct as careless mistakes and assured that he has since taken steps to improve the way he does business." Id. at ¶ 20. Finding Norton's misconduct primarily attributable to "poor organizational skills in his practice," we stayed his six-month suspension on conditions, including the completion of continuing legal education in law-office and case-file management and the commission of no further misconduct. Id. at ¶ 24-25.

{¶ 20} Accordingly, consistent with these precedents, respondent is suspended from the practice of law in Ohio for one year, stayed upon the following conditions: (1) that respondent complete 12 hours of CLE in law-office management, with instruction to cover office organization, time and task management, and basic software aids for case management, (2) that respondent submit to a stress-management assessment by OLAP and enter into any follow-up

contract deemed necessary by OLAP, (3) that respondent participate in a two-year mentoring program similar to the one previously offered by the Allen County Bar Association, with a mentor that is mutually satisfactory to respondent and the Allen County Bar Association, and (4) that respondent commit no further misconduct.

**{¶ 21}** Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and OSOWIK, JJ., concur.

THOMAS J. OSOWIK, J., of the Sixth Appellate District, sitting for CUPP, J.

_____

Baran, Piper, Tarkowsky, Fitzgerald & Theis Co., L.P.A., and Robert B. Fitzgerald, for relator.

Gallagher Sharp, Alan M. Petrov, and Monica A. Sansalone, for respondent.

_____