[Cite as *Disciplinary Counsel v. Brueggeman*, 128 Ohio St.3d 206, 2010-Ohio-6149.]

DISCIPLINARY COUNSEL *v.* BRUEGGEMAN.

[Cite as *Disciplinary Counsel v. Brueggeman*,

128 Ohio St.3d 206, 2010-Ohio-6149.]

*Attorneys — Misconduct — Engaging in conduct that adversely reflects on fitness to practice law — Failing to act with reasonable diligence and promptness — Failing to keep client reasonably informed about status of case — Failing to respond to client's request for information — 12-month suspension, all stayed, on conditions.*

(No. 2010-1220 — Submitted September 15, 2010 — Decided December 21, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-090.

_____

**Per Curiam.**

{¶ 1} Respondent, Edward Paul Brueggeman of Columbus, Ohio, Attorney Registration No. 0029159, was admitted to practice law in Ohio in 1972. The Board of Commissioners on Grievances and Discipline concluded that respondent engaged in professional misconduct and recommends that this court suspend his license to practice law for 12 months, but stay that suspension on conditions that he serve one year of probation pursuant to Gov.Bar R. V(9), adhere to an existing contract with the Ohio Lawyers Assistance Program ("OLAP"), refrain from any additional misconduct, and pay costs. We agree and adopt its recommendation for a 12-month suspension stayed on conditions that he serve one year of probation, comply with the OLAP contract, attend counseling, and refrain from further misconduct.

**Factual History**

**{¶ 2}** On December 8, 2008, relator, Disciplinary Counsel, filed a five-count complaint against respondent, alleging numerous violations of the Rules of Professional Conduct stemming from respondent's failure to communicate with and manage cases for several clients and his refusal to cooperate with related disciplinary investigations. The parties submitted the matter on stipulations to a panel of the Board of Commissioners on Grievance and Discipline. After a hearing on the matter, the panel adopted the stipulations and made findings of fact and conclusions of law and recommended that the respondent's license be suspended for 12 months, with the entire suspension stayed with probation, on the conditions that he continue his OLAP contract, continue counseling, and refrain from further misconduct.

**{¶ 3}** The board adopted the panel's findings of fact, conclusions of law, and suggested sanction. Neither respondent nor relator has objected to the board's recommendation.

### Misconduct

*Count One*

**{¶ 4}** A client retained respondent to obtain a dissolution of her marriage in June 2007. When respondent failed to respond to inquiries on several occasions, the client filed a grievance against respondent for neglecting to file the dissolution and for failing to respond to her requests for information. Upon receipt of the grievance, relator sent a certified letter of inquiry to respondent, which he accepted. Despite asking for a two-week extension, respondent never responded to the letter. As a result, relator then sent a second certified letter of inquiry to respondent, which he again accepted. However, he failed to respond to this letter as well. In May 2008, nearly a year after he was retained, respondent filed the client's petition for dissolution.

**{¶ 5}** The parties stipulated that the misconduct alleged in Count One violated Prof.Cond.R. 1.3 (a lawyer shall act with reasonable diligence and

promptness in representing a client), 1.4(a)(3) (a lawyer shall keep the client reasonably informed about the status of a matter), and 8.1(b) (a lawyer shall not knowingly fail to respond to a demand for information from a disciplinary authority).

{¶ 6} Respondent disputed charges in Count One that his conduct violated Prof.Cond.R. 1.4(a)(4) (a lawyer shall comply as soon as practicable with reasonable requests for information from the client) and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The board found clear and convincing evidence that respondent did violate these provisions. Specifically, the board determined that respondent had violated Prof.Cond.R. 8.4(h) because he filed the client's petition for dissolution nearly one year after she retained him and after she filed the grievance against him. We agree with this conclusion. Moreover, there is clear and convincing evidence that respondent violated Prof.Cond.R. 1.4(a)(4) in that the stipulations reflect that the client unsuccessfully sought information regarding the status of her case from respondent on multiple occasions. Therefore, we adopt the findings and conclusions of the board as to Count One.

*Count Two*

{¶ 7} A second client retained respondent to prepare a deed. Respondent prepared the deed incorrectly, and it was rejected by the recorder's office. Respondent also misplaced the client's file, forcing the client to resolve the problem himself. Moreover, respondent admitted that he never filed a corrected deed.

{¶ 8} Upon receipt of the grievance filed by the client, relator sent a certified letter of inquiry to respondent, which his wife accepted. Despite asking for a two-week extension, respondent failed to respond. A second certified letter of inquiry was accepted by respondent, but he again failed to respond.

**{¶ 9}** Relator and respondent stipulated that the conduct described in Count Two violated Prof.Cond.R. 1.4(a)(2) (a lawyer shall "consult with the client about the means by which the client's objectives are to be accomplished") and 8.1(b).

**{¶ 10}** Although respondent disputed charges that his conduct violated Prof.Cond.R. 1.3, 1.4(a)(4), and 8.4(h), the board found clear and convincing evidence that he had violated these provisions, as well as Prof.Cond.R. 1.4(a)(3). Specifically, the board found a violation of Prof.Cond.R. 8.4(h) based on respondent's loss of the client's files and his failure to resolve the client's case, which forced the client to resolve it without respondent's help. We agree that this conduct violated Prof.Cond.R. 8.4(h). The board also found a violation of Prof.Cond.R. 1.3, a finding supported by respondent's failure to file a corrected deed once the initial deed had been rejected by the recorder's office.

**{¶ 11}** However, we do not find clear and convincing evidence of the allegations in Count Two that respondent violated Prof.Cond.R. 1.4(a)(3)[1] or (4). Respondent testified that he had communicated with the client regularly regarding the status of the deed, and other than the client's unsworn grievance, there is no evidence that respondent failed to respond to requests for information from the client. Thus, we adopt the findings and conclusions of the board as to Count Two, except with respect those relating to Prof.Cond.R. 1.4(a)(3) and (4).

### Count Three

**{¶ 12}** A third client hired respondent to handle the disposition of an estate and paid an initial fee; respondent, however, failed to complete the work necessary to close the estate. The client sent a letter to respondent, expressing concerns about the lack of information provided about the case and requested the return of the fee paid and documents provided to respondent. Upon receiving no

---

1. The parties did not stipulate to and respondent did not dispute a violation of Prof.Cond.R. 1.4(a)(3).

response from respondent, the client filed a grievance. She also filed an action in small claims court seeking return of the fee, and when respondent did not answer or appear, she obtained a default judgment.

{¶ 13} Relator sent a certified letter of inquiry to respondent's home address, which a family member accepted. Despite asking for a two-week extension, respondent failed to respond to the letter. Relator then sent a second certified letter, which respondent accepted, but again he did not reply. Fifteen months after agreeing to handle the estate, respondent returned the client's documents and refunded the fee.

{¶ 14} Relator and respondent stipulated to violations of Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 1.15(d) (a lawyer shall promptly deliver to a client any funds or property the client is entitled to receive), and 8.1(b).

{¶ 15} Respondent disputed charges that the conduct alleged in Count Three violated Prof.Cond.R. 8.4(h). Nonetheless, the board found clear and convincing evidence that respondent violated this provision because respondent did not return the client's money until after the grievance had been filed. We agree and thus adopt the findings and conclusions of the board as to this count.

*Count Four*

{¶ 16} A fourth client filed a grievance against respondent regarding his lack of communication with respect to a family trust. Relator sent a certified letter of inquiry to respondent, which he accepted, but despite asking for a two-week extension, he failed to respond. Relator sent a second certified letter of inquiry, which respondent accepted, but to which he failed to respond until several months later.

{¶ 17} Relator and respondent stipulated to a violation of Prof.Cond.R. 8.1(b). Respondent disputed charges that his conduct violated Prof.Cond.R. 8.4(h). The board nonetheless found clear and convincing evidence that respondent had violated this provision because he waited to contact the client until

after the grievance had been filed. We agree and thus adopt the findings and conclusions of the board.

*Count Five*

**{¶ 18}** A fifth client hired respondent in 2005 to provide assistance in resolving his father's estate. When respondent failed to address matters relating to the disposition of a time-share property and a bank account, the client filed a grievance against respondent in late 2007. Relator sent out three letters of inquiry in connection with this grievance — one accepted by respondent's wife, a second accepted by respondent, and a third letter accepted by an unknown person — but respondent failed to respond to any of the letters.

**{¶ 19}** Relator and respondent stipulated to violations of Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), and 8.1(b).

**{¶ 20}** Respondent disputed charges that his conduct violated Prof.Cond.R. 8.4(h). The board nonetheless found clear and convincing evidence that respondent violated this provision because when respondent could not resolve the time-share property and bank matters, he stopped communicating with the client. We agree with this conclusion. Thus, we adopt the findings and conclusions of the board as to Count Five.

**Sanction**

**{¶ 21}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 22}** As aggravating factors, the board found that respondent had displayed a pattern of misconduct, committed multiple offenses, and refused to cooperate with Disciplinary Counsel during the investigatory period prior to the filing of the complaint. BCGD Proc.Reg. 10(B)(1)(c), (d), and (e). The parties stipulated that respondent's lack of a prior disciplinary record was a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(a). The board found the following additional mitigating factors: absence of a dishonest or selfish motive, full and free disclosure to disciplinary authority or cooperative attitude toward the proceeding after the complaint had been filed, and good character and reputation. BCGD Proc.Reg. 10(B)(2)(b), (d), and (e).

**{¶ 23}** Respondent contacted OLAP in September 2009. He testified that he felt "frozen in his practice," avoided matters that needed to be addressed, and did not handle conflict well. He signed a four-year contract with OLAP on December 4, 2009, and has continued to comply with its terms. He has consulted a licensed clinical psychologist and is continuing treatment. His therapist testified by deposition, and Stephanie Krznarich of OLAP testified in person. Both professionals agree that respondent suffers from dysthymia, a low-level depression lasting two or more years. Krznarich testified that he has made unusually strong progress and that his prognosis is good.

**{¶ 24}** When asked whether he had an opinion to a reasonable degree of professional certainty as to whether there is a causal connection between this diagnosis of dysthymia and respondent's conduct in this case of neglecting clients and failing to respond to Disciplinary Counsel, respondent's therapist answered, "I do. I think it was the ultimate conclusion." He also testified that to a reasonable degree of professional certainty, respondent can maintain the proper competent, ethical, and professional practice of law if he continues to make progress.

**{¶ 25}** The board found mitigating respondent's mental disability (depression) with (1) a diagnosis of mental disability by a qualified healthcare professional, (2) a determination that the mental disability contributed to the cause of the misconduct, (3) a sustained period of successful treatment, and (4) a prognosis from a qualified healthcare professional that respondent will be able to return to competent, ethical professional practice with continued treatment. See BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv).

**{¶ 26}** Neither relator nor respondent has objected to the sanction recommended by the board. We conclude that a 12-month stayed suspension is warranted based on respondent's misconduct. See, e.g., *Allen Cty. Bar Assn. v. Brown*, 124 Ohio St.3d 530, 2010-Ohio-580, 925 N.E.2d 112 (imposing a 12-month stayed suspension with conditions based, in part, on findings that the respondent neglected legal matters and did not act with reasonable diligence and promptness). Thus, having reviewed the record, weighed the aggravating and mitigating factors, and considered the sanctions imposed for comparable conduct, we adopt the board's findings of fact and conclusions of law, except with respect to the alleged violations of Prof.Cond.R. 1.4(a)(3) and (4) in Count Two. In addition, we adopt the board's recommended sanction of a 12-month stayed suspension with conditions plus costs.

**{¶ 27}** Accordingly, Edward Paul Brueggeman is suspended from the practice of law for 12 months, with the entire suspension stayed on the conditions that he serve one year of probation pursuant to Gov.Bar R. V(9), continue to comply with his existing OLAP contract, continue counseling, and refrain from any additional misconduct. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent will serve the entire 12-month suspension. Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Alvin Mathews, for respondent.

_____